In the Matter of JOHN G. KELLOGG, Petitioner, against JAMES R. MACDUFF, as Commissioner of Motor Vehicles of the State of New York, Respondent.

Supreme Court, Adjourned Motion Term, Onondaga County, August 13, 1954.

*Eugene R. Custer* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Herman H. Arkin* of counsel), for respondent.

SULLIVAN, J. The petitioner was operating a motor vehicle in the village of Camden, N. Y., on the 3d day of November, 1953, at about eight-fifty o'clock in the evening, when he became involved in an accident with another motor vehicle. No one was injured in the accident, although both cars were damaged. After the accident, the petitioner was questioned by a member of the New York State police with regard to the circumstances of the accident. At the trooper's request, the petitioner immediately submitted to the withdrawal of a sample of his blood by a physician at Camden, N. Y., for the purpose of having an analysis of the alcoholic content thereof, as provided in subdivision 5 of section 70 of the Vehicle and Traffic Law. Following this, the petitioner was apparently permitted to return to his home near Rochester, N. Y., although another person drove the automobile. On the following morning, the petitioner appeared before a justice of the peace in the town where the accident occurred, whereupon he was charged with and arraigned upon the misdemeanor of driving a motor vehicle while in an intoxicated condition on the previous evening at the time and place of the accident. The petitioner was not represented by counsel at the arraignment, nor were the results of the chemical analysis of his blood available.

The petitioner plead guilty to the information charging him with the operation of a motor vehicle while intoxicated.

Under date of January 15, 1954, the Commissioner of Motor Vehicles revoked the petitioner's license because of the aforementioned conviction as provided in paragraph (b) of subdivision 2 of section 71 of the Vehicle and Traffic Law.

Apparently, the blood alcohol determination of the petitioner's blood was not made until some two months after the blood specimen was taken, but before the date of the revocation of his operator's license by the commissioner. It showed a test of .03% grams by weight of alcohol in his blood. This is prima facie evidence that the petitioner was not in an intoxicated condition. (Vehicle and Traffic Law, § 70, subd. 5.)

It is now the contention of the petitioner, that, at the time of his plea, he did not consider himself to have been guilty of operating a motor vehicle while intoxicated, but that he entered such a plea so as to avoid the inconvenience of having to return to Camden from his home near Rochester for a trial, and for

the further reason that he was led to believe that the offense was not to be considered a serious one, and that the fine to be imposed would be nominal. He also contends, that, to the best of his recollection, he was not informed that the revocation of his license was mandatory.

The Commissioner of Motor Vehicles, in his answer, denies that he has sufficient knowledge or information to form a belief as to the allegations of the petition, except that it is admitted that the petitioner is fifty years of age; that he resides at Forrest Hills, Monroe County; that he was the owner and holder of an operator's license; that the commissioner revoked this license; that the petitioner was involved in an accident on November 3, 1953, in the village of Camden; that no one was injured in the accident; and that only slight damage was done to either car; that petitioner plead guilty to the charge of driving an automobile while in an intoxicated condition.

The petitioner assigns three grounds for consideration by this court to grant the relief which he seeks. Two of the three are practically the same, namely: that the petitioner was not properly informed of his rights by the Justice of the Peace at the time of his arraignment on the charge of operating a motor vehicle while in an intoxicated condition. The petitioner contends that, even if the Justice of the Peace did read to the petitioner at his arraignment the exact language of section 335-a of the Code of Criminal Procedure, it would not serve to inform him of the risk of his license being revoked. This question has been definitely settled by the decision of the Fourth Department in *Matter of Eckerson* v. *Macduff* (284 App. Div. 56).

The petitioner also urges that the examination of the docket of the Justice of the Peace indicates that, if section 335-a of the Code of Criminal Procedure had been read to the petitioner at his arraignment, it was in the language of section 335-a prior to the amendment of 1953. In answer to this contention, the Commissioner of Motor Vehicles, as a part of his answer, exhibits a certificate of conviction of the defendant on the charge of " driving while intoxicated " on November 4, 1953, in the Court of Special Sessions at Camden, New York, with a certification by the Magistrate that he read to the defendant the provision of section 335-a of the Code of Criminal Procedure as amended by the Laws of 1953.

In view of this certification by the Magistrate to the effect that he did read to the petitioner the provisions of section 335-a of the Code of Criminal Procedure, this court holds that, upon

the moving papers herein, the Court of Special Sessions properly and fully advised the petitioner of his rights at the time of his arraignment. (*Matter of Eckerson* v. *Macduff, supra.*) However, a most serious situation exists with regard to the petitioner's plea of guilty to driving a motor vehicle while intoxicated, when a chemical test of his blood reveals that the determination was that its contents contained .03% grams of alcohol in weight and therefore prima facie evidence that he was not in an intoxicated condition. (Vehicle and Traffic Law, § 70, subd. 5.) Had the matter gone to trial, the jury could very easily have acquitted the petitioner in view of the rule of evidence prescribed in the statute. In fact, this court is of the opinion that the arresting officer, in the usual fairness of the State police, would not have charged and caused the defendant to be arraigned for operating a motor vehicle while in an intoxicated condition, if, at the time, he had had the report of the pathologist with respect to the weight of alcohol in petitioner's blood.

The chemical analysis was made at the behest of the arresting officer to be used as evidence to convict the petitioner, if he had plead not guilty. It now develops that the result of the analysis is most favorable to him. It seems to this court that he is entitled to the benefit of this evidence in his favor, even at this late date.

How can this be accomplished? The Court of Special Sessions cannot permit the defendant to withdraw his plea of guilty, because judgment has been pronounced. (Code Crim. Pro., § 337.)

This court cannot set the conviction aside in this proceeding.

The petitioner's time in which to appeal from his conviction has long since expired. No relief can be had under sections 463 to 465 of the Code of Criminal Procedure, because these sections deal exclusively with cases in which there had been a jury trial.

However, this court is of the opinion that a remedy may be a *coram nobis* on the theory that a fraud or misrepresentation had been perpetrated upon the court. At first flush, this may appear to be a farfetched theory, but fair dealing leads one to reason that the prosecution had available evidence which, if known to the petitioner, would have completely changed the course of events, because he most certainly would not have pleaded guilty with the knowledge that the chemical analysis would be prima facie evidence that he was not in an intoxicated condition while operating a motor vehicle. It is to be remem-

bered that the blood test was made at the instigation of the prosecution who had the right to decide whether or not the analysis should be completed. As a matter of fact, the captain of the troop of the State police wrote to the petitioner under date of March 23, 1954, in part as follows: " It was not necessary to immediately test your blood and this was not done until two months later ".

The fact remains that the analysis was made. It is not too unreasonable to assume that the petitioner, at the time of his plea, was of the opinion that the analysis had been completed, and that it indicated an unfavorable result.

The commissioner may well argue that the petitioner should have plead not guilty to the charge and to have demanded a copy of a report of the analysis to determine his sobriety or intoxication. His reason for not doing so may not be a good one, but it most certainly is a common one, namely: that he did not want the inconvenience to make another trip of some 200 miles or more when the matter could be completed by the payment of a small fine. The courts should protect the accused from their own folly to the end that no one will be unjustly accused, to say nothing of convicted.

In suggesting that a fraud was committed upon the court, and that a misrepresentation was made, this court in no way intends, or even infers, that the arresting officer deliberately perpetrated it. Nor was a fraud committed in the delay in having the analysis completed. The court is using the language of the reported cases. But when the report of the analysis, which was conducted on the blood specimen taken before the plea of guilty, became available, its favorable purport to the petitioner should become the concern of the court.

It is obvious from the moving papers that the arresting officer was most fair in his treatment of the petitioner. It is also to be remembered that the petitioner was most co-operative in submitting to the blood test. However, it is significant to bear in mind that the arresting officer permitted the petitioner to return to his home immediately after the blood test was taken. This would indicate to the writer that the petitioner was not, from the arresting officer's observation, in too great a degree of intoxication or else he would have been incarcerated.

Apparently, the Justice of the Peace has an open mind with regard to the proceedings in *coram nobis* since he wrote to the attorney for the petitioner under date of June 22, 1954, in part as follows: " I am of the opinion that it would be useless to

entertain a coram nobis application upon the facts in the matter, and therefore decline to entertain such an application unless ordered to do so by higher authority ''.

This court does not hold that it is '' higher authority '', nor does it hold that it has the right to order the Justice of the Peace to entertain an application in *coram nobis,* but it strongly suggests that the Justice of the Peace entertain the proceedings with the co-operation of the prosecution. This should be done in the interest of justice.

This court holds that the order of the Commissioner of Motor Vehicles which revoked the operator's license of the petitioner should be annulled and set aside. The court is not unmindful that paragraph (b) of subdivision 2 of section 71 of the Vehicle and Traffic Law provides for mandatory revocation of an operator's license for a violation of subdivision 5 of section 70 of the same law. However, the revocation does not follow as a matter of course, as is pointed out in *Matter of Eckerson* v. *Macduff.* (284 App. Div. 56, *supra*).

In conclusion, this court again states that it intends no criticism of the acts of the arresting officer, Justice of the Peace or the Commissioner of Motor Vehicles. This court recognizes that the law-enforcing agencies, courts and Commissioner of Motor Vehicles must be ever vigilant in the performance of their duties if the highways are to be rid of the '' drunken driver ''. Equally important, if not more so, is fairness in the administration of justice. This court feels that this is a case where an operator of a motor vehicle is convicted of a crime, by his own plea, but for which he is prima facie not guilty as indicated by the analysis of his blood which was made in accordance with the statute.

Order accordingly.